UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SCOTT MYERS,

                                  Plaintiff,

    -against-                                                1:14-cv-1492 (LEK/CFH)

THE PEOPLE OF THE STATE OF
NEW YORK, *et al.*,

                                  Defendants.

---

**MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

*Pro se* Plaintiff Scott Myers ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 for violations of his civil rights that allegedly occurred after he was arrested on the charge of driving while intoxicated. Dkt. No. 1 ("Complaint"). In a Memorandum-Decision and Order issued on February 9, 2016, the Court conducted an initial review of Plaintiff's Amended Complaint. Dkt. Nos. 26 ("Amended Complaint"); 48 ("February Order"). The Court found that Plaintiff's Amended Complaint did not include sufficient factual allegations to allow the Court to determine whether Plaintiff's claims were timely. Feb. Order at 7. In light of Plaintiff's *pro se* status, the Court afforded Plaintiff one final opportunity to amend his Complaint. Id. The Court further instructed Plaintiff to submit a memorandum of law addressing the timeliness of his claims and setting forth any arguments in favor of equitable tolling. Id. at 8. Presently before the Court is an initial review of Plaintiff's Second Amended Complaint, which was timely filed on February 25, 2016. Dkt. No. 49 ("Second Amended Complaint"). Plaintiff addresses the issue of equitable

tolling in the Second Amended Complaint.[1]  Id.

## II.     INITIAL SCREENING

### A.  Legal Standard

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Second Amended Complaint in light of 28 U.S.C. § 1915(e).[2]  Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C.         § 1915(e)(2)(B).[3]

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure.  Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the

---

[1] On March 4, 2016, Plaintiff filed a Motion seeking to incorporate a motion that he had previously filed in a pending case in state court.  The Court found that the state court motion was not directly relevant to Plaintiff's federal claims and consequently denied Plaintiff's request to incorporate the state court motion.  Dkt. Nos. 50; 51.

[2] "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."  Arce v. Walker, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977)).  Accordingly, the Court will review the Second Amended Complaint in place of the original Complaint and Amended Complaint.

[3] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).

2

adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Powell v. Marine Midland Bank, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (quoting Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." Id. Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009).

### B. Summary of the Second Amended Complaint

The following facts are set forth as alleged by Plaintiff in his Second Amended Complaint. On June 28, 2009, Plaintiff was driving home from a small group ministries meeting, where he alleges no alcohol was served. Sec. Am. Compl. ¶ 1. Plaintiff alleges that he was in compliance with the posted thirty-five mile per hour speed limit when he was pulled over by Saugerties police. Id. ¶¶ 2-3. Plaintiff produced his driver's license and registration. Id. ¶ 3. Plaintiff alleges that Defendant Officer Gambino ("Defendant") was speaking aggressively to him and almost

3

immediately, two more police cars appeared at the scene. Id. In total, there were five police officers at the site of Plaintiff's arrest. Id. Plaintiff alleges that Defendant seemed agitated at the outset and was acting aggressively toward him without reason. Id. Defendant asked Plaintiff to get out of his car, placed him in handcuffs, and put him in the back of a patrol car. Id. ¶ 4. Plaintiff claims he asked for an attorney. Id. ¶ 5. Plaintiff was taken out of the patrol car and asked to perform various field sobriety tests, which he claims he did to the best of his ability. Id. ¶ 6. He alleges that he was screamed at and told he was not cooperating. Id. Plaintiff repeated his request for an attorney and refused to answer any questions. Id.

At around 1:30 or 2:00 a.m., Plaintiff was put back in the patrol car and driven to the Town of Saugerties police station. Id. ¶¶ 7-8. Plaintiff alleges that he was not given Miranda warnings or advised of his rights regarding the refusal to take chemical tests at the scene of his arrest. Id. ¶ 8. When Defendant told Plaintiff to blow into the breathalyzer, Plaintiff told him he did not trust him or the situation and he did not believe that Defendant was honest or competent. Id. Plaintiff contends that Defendant lacked the required license to operate the chemical test equipment. Id. ¶ 9. Plaintiff claims that once at the police station, he offered to take a blood test as long as the blood test was performed by a health professional. Id. ¶ 8. Plaintiff was arraigned at 5:00 a.m. before Town of Saugerties Judge Daniel Lamb ("Judge Lamb"). Id. ¶ 10. Plaintiff contends that he once again requested an attorney before being sent to the Ulster County jail. Id. He contends that intake at Ulster County Jail recorded no evidence that Plaintiff had used drugs or alcohol that evening. Id. ¶ 11. Plaintiff was seen by Dr. Mitchell, a psychiatrist, upon Plaintiff's request. Id. ¶ 12. Dr. Mitchell found that Plaintiff suffered from post-traumatic stress disorder ("PTSD") as a result of the 9/11 terrorist attacks. Id. ¶ 13. Dr. Mitchell did not find that Plaintiff suffered from any drug or

4

alcohol dependency. Id. Following his meeting with Dr. Mitchell, Plaintiff was released from jail. Id. ¶ 14.

Plaintiff contends that his request for a jury trial was denied. Id. ¶ 15. He states that a trial was scheduled about two years after his initial arrest, but he declined to attend for lack of a jury of his peers. Id. ¶ 16. Following his failure to appear at trial, Plaintiff was arrested in the village of Tannersville where he lived and held in jail for seven days by Judge Lamb. Id. ¶ 17. Plaintiff was held in jail as a pre-trial detainee awaiting trial for contempt of court. Id. ¶ 21. On February 5, 2013, Plaintiff's trial took place before Judge Lamb, 1315 days after Plaintiff's initial arrest. Id. Defendant was the only witness. Id. Plaintiff contends that at the trial, it was proven that Defendant was not licensed to operate his chemical test equipment, did not know how to use his speed detector, and that Plaintiff was not driving in excess of the speed limit at the time of his arrest. Id. ¶ 22. Plaintiff asserts that Defendant lied in his paperwork, at trial, at an administrative hearing before the Department of Motor Vehicles ("DMV"), and likely to the local press. Id. Judge Lamb issued a decision on May 28, 2014. Id. ¶ 23.

The DMV held an administrative hearing roughly four months after Plaintiff's initial arrest. Id. ¶ 20. The Administrative Law Judge confirmed that Defendant's conduct in arresting Plaintiff was lawful. Id. Plaintiff has not driven since his arrest in 2009 and has not been allowed to obtain a driver's license. Id. ¶ 25.

Plaintiff asserts the following fifteen causes of action against Defendant: (1) false arrest; (2) physical and verbal abuse at the scene of arrest; (3) creating a false demand to obtain a chemical breath test; (4) making a false claim that Plaintiff was physically aggressive toward him and that Plaintiff disobeyed his instructions; (5) denying Plaintiff's request for counsel at the scene of the

5

arrest; (6) lying that Plaintiff was speeding; (7) performing aggressive tests on Plaintiff and making up the answers; (8) unlawfully seizing Plaintiff's car; (9) searching Plaintiff's vehicle without permission; (10) lying during the DMV administrative hearing; (11) failing to correct false claims at trial; (12) exacerbating the symptoms of Plaintiff's PTSD; (13) interfering with Plaintiff's right to parent his children and damaging Plaintiff's reputation; (14) causing "direct harm" to Plaintiff by failing to correct his false claims until he was forced to at trial; (15) causing "community damage" to Plaintiff by the entire pattern of behavior displayed by Defendant. Id. at 12-16.[4]

**C. Analysis**

*1. 42 U.S.C. § 1983*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." German v. Fed. Home Loan Mortg. Corp., 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 508 (1990); see also Myers v. Wollowitz, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) ("Section 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.").[5] "Section 1983 itself creates no substantive rights, [but] only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). The

---

[4] Citations to the "causes of action" section of Plaintiff's Second Amended Complaint refer to the page numbers used by Plaintiff.

[5] Although Plaintiff does not mention § 1983 in the Second Amended Complaint, Plaintiff had previously styled his claims as being brought pursuant to § 1983 and the Court finds that the nature of the claims is sufficient to allow the Court to infer that Plaintiff intends to bring his claims pursuant to § 1983. See Johnson v. City of Shelby, 135 S. Ct. 346 (2014) (stating that a failure to specify 42 U.S.C. § 1983 as the vehicle for pleading a constitutional claim is not a defect warranting dismissal, at least in the absence of some prejudice to the defendant).

6

Court will construe the allegations in Plaintiff's Second Amended Complaint with the utmost leniency. See, e.g., Haines v. Kerner, 404 U.S. 519, 521 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers").

*2. Application*

In § 1983 actions, the applicable statute of limitations is the State's "general or residual [state] statute [of limitations] for personal injury actions . . ." Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (quoting Owens v. Okure, 488 U.S. 235, 249-50 (1989)). In New York, a three-year statute of limitations applies for personal injury actions and thus to § 1983 actions. Id.; see also N.Y. C.P.L.R. 214(5). Although state law provides the relevant limitations period, federal law determines when a § 1983 action accrues, which has been held to be the time "when the plaintiff knows or has reason to know of the harm." Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001); see also Covington v. City of New York, 916 F. Supp. 282, 285 (S.D.N.Y. 1996). "Thus, in determining when the statute begins to run, 'the proper focus is on the time of the [wrongful] act, not the point at which the consequences of the act become painful.'" Covington, 916 F. Supp. at 285 (quoting Bailey v. Tricolla, No. CV-94-4597, 1995 WL 548714, at *3 (E.D.N.Y Sept. 12, 1995)).

i. Claims Arising from Plaintiff's Arrest

Plaintiff commenced this action on December 10, 2014. Compl. Plaintiff was arrested on June 28, 2009; therefore, any claims that accrued the night of Plaintiff's arrest should have been commenced no later than June 28, 2012 in order to be timely under § 1983. Sec. Am. Compl. The statute of limitations for a § 1983 claim seeking damages for false arrest, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant

to legal process.  See Wallace v. Kato, 549 U.S. 384, 397 (2007).  Plaintiff was detained immediately following his arrest on June 28, 2009.  Sec. Am. Compl. ¶¶ 7-8.  Accordingly, Plaintiff's false arrest claim should have commenced no later than June 28, 2012.  Plaintiff's second, third, fifth, seventh, eighth, and ninth causes of action are based on Defendant's actions the night of Plaintiff's arrest, or with respect to the seizure and search of Plaintiff's car, conduct that occurred shortly after Plaintiff's arrest.  Accordingly, these causes of action should have been commenced within three years of Plaintiff's arrest and are therefore untimely.

Plaintiff's tenth cause of action, asserting that Defendant lied during the DMV administrative hearing is also untimely.  The DMV hearing occurred "roughly four months" after Plaintiff's arrest, which would be around October 2009.  Therefore, any claims arising out of actions that took place at the DMV hearing should have been commenced no later than October 2012.

The Court will construe Plaintiff's fourth, sixth, and eleventh causes of action as asserting that Plaintiff was deprived of due process during his bench trial before Judge Lamb because Defendant allegedly made false claims that Plaintiff was physically aggressive toward him, that Plaintiff disobeyed his instructions, that Plaintiff was speeding, and Defendant failed to correct these false claims at trial.  Since Plaintiff's bench trial occurred February 3, 2013, this claim is timely and requires a response from Defendant.

Plaintiff's claim that Defendant's actions exacerbated the symptoms of Plaintiff's PTSD should be construed as a claim under state law for intentional infliction of emotional distress.  Under New York law, a cause of action for intentional infliction of emotional distress is limited to conduct that occurred within the one-year period immediately preceding the commencement of the action. Mariani v. Consol. Edison Co. of N.Y., 982 F. Supp. 267, 273 (S.D.N.Y. 1997).  When applying the

one-year statute of limitations to claims of intentional infliction of emotional distress, "[a]ll acts occurring before the limitations period are excluded from consideration." Santan-Morris v. N.Y. Univ. Med. Ctr., No. 96 Civ. 0621, 1996 WL 709577, at *2 (S.D.N.Y. Dec. 10, 1996). New York courts are generally reluctant to extend the statute of limitations to conduct that occurred more than one year prior to commencing suit based on a theory of continuing wrongs. Id. at *4. Nevertheless, even if the Court were to include conduct that occurred dating back to Plaintiff's initial arrest in 2009 under the continuing wrongs theory, Plaintiff's intentional infliction of emotional distress claim is still untimely, as Plaintiff's last interaction with Defendant appears to have occurred at his trial on February 5, 2013, and this action was not commenced until December 10, 2014. Accordingly, Plaintiff's intentional infliction of emotional distress claim is dismissed as untimely.

Plaintiff also appears to argue that Defendant's actions violated the Eighth Amendment by exacerbating Plaintiff's mental health issues. Sec. Am. Compl. at 21. Although Plaintiff does not specify which specific acts by Defendant violated his Eighth Amendment rights, to the extent that Plaintiff alleges that Defendant's actions the night of Plaintiff's arrest constitute an Eighth Amendment violation, that claim is untimely. However, to the extent that Plaintiff alleges that Defendant's conduct at trial exacerbated his mental health issues, that claim is timely. "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009). The objective component focuses on the harm done to the plaintiff, in light of "contemporary standards of decency." Hudson v. McMillian, 503 U.S. 1, 8 (1992). This requires a court to examine whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."

9

Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Under the subjective component, the plaintiff must demonstrate that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness'" in light of the particular circumstances surrounding the challenged conduct. Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999). Whether "wantonness" is found depends on whether the officer was acting in good faith to protect the public interest, or "maliciously and sadistically to cause harm." Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009). The only allegations that Plaintiff has set forth in support of an Eighth Amendment claim is that Defendant lied in the police report that formed the basis of the prosecution against Plaintiff and that Defendant failed to correct his false claims during Defendant's trial. The Court finds that Plaintiff fails to state an Eighth Amendment claim against Defendant, as Plaintiff fails to allege that Defendant acted maliciously and sadistically to cause harm to Plaintiff during Plaintiff's trial before Judge Lamb, or that this conduct is objectively harmful enough to state a claim under the Eighth Amendment. Accordingly, Plaintiff's Eighth Amendment claim against Defendant is dismissed.

As for Plaintiff's thirteenth cause of action, the Court finds that Plaintiff's allegations that Defendant's conduct interfered with Plaintiff's right to parent his children and damaged Plaintiff's reputation fail to state a cognizable claim. To the extent that Plaintiff alleges that his incarceration was unlawfully caused by Defendant, that claim is more appropriately addressed under the due process clause. The Court also finds that Plaintiff's fourteenth cause of action, alleging that Defendant caused him "direct harm" by failing to correct false claims until trial, and fifteenth cause of action, alleging that Defendant caused "community damage" to Plaintiff, do not state independent causes of action and are duplicative of Plaintiff's due process claim. Accordingly, the thirteenth, fourteenth, and fifteenth causes of action are subject to dismissal.

### 3. *Equitable Tolling*

In the February Order, the Court advised Plaintiff that some of his claims may be untimely and instructed him to provide the Court with any arguments in favor of equitable tolling. Feb. Order at 8. "In cases where the statute of limitations has run, equitable tolling may be available." Boyle v. DeWolf, No. 13-CV-0104, 2013 WL 1749933, at *2 (N.D.N.Y. Apr. 23, 2013) (Kahn, J.). Equitable tolling is available only in "rare and exceptional circumstances," where a court finds that "extraordinary circumstances" have prevented a party from filing his or her claims within the statute of limitations. Abbas v. Dixon, 480 F.3d 560, 564 (2d Cir. 2007). The party asserting that equitable tolling applies must have "acted with reasonable diligence throughout the period he [sought] to toll." Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004). Further, a plaintiff bears the burden of establishing that equitable tolling of her claims is appropriate. Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000). Equitable tolling is generally not available where the circumstances that a plaintiff claims prevented him from timely filing were within the plaintiff's control. See Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001) (noting that the "exceptional circumstances" giving rise to equitable tolling must be "beyond [the] control" of the party who seeks to benefit from it); see also Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005) (finding that equitable tolling was not available where *pro se* litigant's delay in filing his § 1983 action appeared to be entirely within his control).

Plaintiff argues that the state court colluded with the police to "obfuscate Due Process" by delaying his trial until the statute of limitations had expired on his claims. Sec. Am. Compl. at 18. However, the issue of when Plaintiff's trial took place is irrelevant for those causes of action that accrued the night of Plaintiff's arrest. The relevant inquiry for statute of limitations purposes is

when the claim accrues, which occurs when a plaintiff knows or has reason to know of the injury upon which the claim is premised. Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir. 1992). In the present case, Plaintiff's injuries occurred at the time of the alleged constitutional deprivations and Plaintiff does not argue that he was not immediately aware of the alleged constitutional deprivations. Therefore, any claims stemming from the night of Plaintiff's arrest accrued on that date and the fact that Plaintiff's trial occurred at a later date does not toll the statute of limitations for those claims. Moreover, Plaintiff's argument that he was incarcerated for much of this period is not sufficient to toll the statute of limitations. Sec. Am. Compl. at 19. In fact, Plaintiff states that he successfully obtained a Court order granting him access to a working legal database for six hours per week as a pre-trial detainee. Id. at 20. Additionally, the numerous exhibits that Plaintiff attached to his Second Amended Complaint indicate that Plaintiff had access to legal resources while he pursued an Article 78 Proceeding and filed numerous other grievances during the relevant time period.

The Court finds that Plaintiff has not demonstrated that any extraordinary circumstances existed that prevented him from pursuing his claims during the relevant three-year period following his arrest. Furthermore, the Court is unpersuaded that Plaintiff lacked the necessary access to legal resources in the three years following his arrest to justify equitable tolling on his untimely claims and consequently finds that Plaintiff has not met his burden of showing that equitable tolling applies, as there is no indication that Plaintiff pursued his federal claims diligently during the time period in question.

### III. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's claims for false arrest, physical and verbal abuse at the scene of arrest, creating a false demand to obtain a chemical breath test, denying Plaintiff's request for counsel at the scene of arrest, performing aggressive tests on Plaintiff and making up the answers, unlawfully seizing Plaintiff's car, searching Plaintiff's car without permission, lying during the administrative hearing, intentional infliction of emotional distress, and cruel and unusual punishment under the Eighth Amendment are **DISMISSED as untimely**; and it is further

**ORDERED**, that Plaintiff's claims for interfering with Plaintiff's right to parent his children and damaging Plaintiff's reputation, causing direct harm to Plaintiff by failing to correct false claims, and causing community damage to Plaintiff are **DISMISSED for failure to state a claim**; and it is further

**ORDERED**, that Plaintiff's fourth, sixth, and eleventh causes of action shall be construed as asserting a claim that Plaintiff was deprived of due process during his bench trial before Judge Lamb that survives initial review and requires a response from Defendant by May 23, 2016; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Decision and Order on Plaintiff.

**IT IS SO ORDERED.**

DATED:   May 09, 2016
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge