UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SCOTT MYERS,

                              Plaintiff,

    -against-                                             1:14-CV-1492 (LEK/CFH)

THE PEOPLE OF THE STATE OF
NEW YORK, *et al.*,

                              Defendants.

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

Pro se plaintiff Scott Myers commenced this action pursuant to 42 U.S.C. § 1983 for violations of his civil rights that allegedly occurred after he was arrested on the charge of driving while intoxicated. Dkt. Nos. 1 ("Complaint"), 26 ("Amended Complaint"), 49 ("Second Amended Complaint"). Presently before the Court is Defendants' Motion to Dismiss, Dkt. No. 60 ("Motion to Dismiss"), and Myers's "Motion for Mandatory Arbitration or Trial Scheduling Order," Dkt. No. 65 ("Myers Motion"). Myers did not file a response to the Motion to Dismiss. For the following reasons, the Court grants Defendants' Motion and denies Myers's Motion.

**II. BACKGROUND**

    **A. Factual Background**

The following facts are set forth as alleged by Myers in his Second Amended Complaint. On June 28, 2009, Myers was driving home from a small group ministries meeting, where he alleges no alcohol was served. Second Am. Compl. ¶ 1. Myers alleges that he was in compliance with the posted thirty-five mile per hour speed limit when he was pulled over by Saugerties

police. Id. ¶¶ 2–3. Myers produced his driver's license and registration. Id. ¶ 3. Myers alleges that Defendant Officer Gambino was speaking aggressively to him, and that almost immediately, two more police cars appeared at the scene. Id. In total, there were five police officers at the site of Myers's arrest. Id. Myers alleges that Gambino seemed agitated at the outset and was acting aggressively toward him without reason. Id. Gambino asked Myers to get out of his car, placed him in handcuffs, and put him in the back of a patrol car. Id. ¶ 4. Myers claims he asked for an attorney. Id. ¶ 5. Myers was taken out of the patrol car and asked to perform various field sobriety tests, which he claims he did to the best of his ability. Id. ¶ 6. He alleges that he was screamed at and told he was not cooperating. Id. Myers repeated his request for an attorney and refused to answer any questions. Id.

At around 1:30 or 2:00 AM., Myers was put back in the patrol car and driven to the Town of Saugerties police station. Id. ¶¶ 7–8. Myers alleges that he was not given Miranda warnings or advised of his rights regarding the refusal to take chemical tests at the scene of his arrest. Id. ¶ 8. When Gambino told Myers to blow into the breathalyzer, Myers told him he did not trust him or the situation and he did not believe that Gambino was honest or competent. Id. Myers contends that Gambino lacked the required license to operate the chemical test equipment. Id. ¶ 9. Myers claims that once at the police station, he offered to take a blood test as long as the blood test was performed by a health professional. Id. ¶ 8. Myers was arraigned at 5:00 AM before Town of Saugerties Judge Daniel Lamb. Id. ¶ 10. Myers contends that he once again requested an attorney before being sent to the Ulster County jail. Id. He contends that intake at Ulster County Jail recorded no evidence that Myers had used drugs or alcohol that evening. Id. ¶ 11. Myers was seen by Dr. Mitchell, a psychiatrist, upon Myers's request. Id. ¶ 12. Dr. Mitchell found that

Myers suffered from post-traumatic stress disorder ("PTSD") as a result of the 9/11 terrorist attacks. Id. ¶ 13. Dr. Mitchell did not find that Myers suffered from any drug or alcohol dependency. Id. Following his meeting with Dr. Mitchell, Myers was released from jail. Id. ¶ 14.

Myers contends that his request for a jury trial was denied. Id. ¶ 15. He states that a trial was scheduled about two years after his initial arrest, but he declined to attend for lack of a jury of his peers. Id. ¶ 16. Following his failure to appear at trial, Myers was arrested in the village of Tannersville where he lived, and he was held in jail for seven days by Judge Lamb. Id. ¶ 17. Myers was held in jail as a pre-trial detainee awaiting trial for contempt of court. Id. ¶ 21. On February 5, 2013, Myers's trial took place before Judge Lamb, 1,315 days after Myers's initial arrest. Id. Gambino was the only witness. Id. Myers contends that at the trial, it was proven that Gambino was not licensed to operate his chemical test equipment, did not know how to use his speed detector, and that Myers was not driving in excess of the speed limit at the time of his arrest. Id. ¶ 22. Myers asserts that Gambino lied in his paperwork, at trial, at an administrative hearing before the Department of Motor Vehicles ("DMV"), and likely to the local press. Id. Judge Lamb issued a decision on May 28, 2014, finding Myers not guilty of all charges. Id. ¶ 23; Dkt. No. 49-1 ("Exhibits") at 1.

The DMV held an administrative hearing roughly four months after Myers's initial arrest. Id. ¶ 20. The Administrative Law Judge confirmed that Gambino's conduct in arresting Myers was lawful. Id. Myers has not driven since his arrest in 2009 and has not been allowed to obtain a driver's license. Id. ¶ 25.

**B. Procedural History**

Myers began this lawsuit on December 10, 2014, Compl., and he filed his Amended Complaint on August 3, 2015, Am. Compl., after the Court dismissed several of his claims, Dkt. No. 18 ("April Order") at 2–3. In a Memorandum-Decision and Order issued on February 9, 2016, the Court conducted an initial review of Myers's Amended Complaint. Dkt. No. 48 ("February Order"). The Court dismissed the Amended Complaint, but in light of Myers's pro se status gave him one last chance to amend his Complaint. Id. The Court further instructed Myers to submit a memorandum of law addressing the timeliness of his claims and setting forth any arguments in favor of equitable tolling. Id. at 8.

In a May 9, 2016 Memorandum-Decision and Order, this Court held that the only claims in the Second Amended Complaint that survived initial review under 28 U.S.C. § 1915(e) were Myers's fourth, sixth, and eleventh causes of action, which the Court construed as asserting that Myers "was deprived of due process during his bench trial before Judge Lamb because [Gambino] allegedly made false claims that [Myers] was physically aggressive toward him, that [Myers] disobeyed his instructions, that [Myers] was speeding, and [Gambino] failed to correct these false claims at trial." Dkt. No. 56 ("May Order") at 8, 13. Accordingly, the Court ordered Defendants to respond to this claim only. Id. at 13.[1]

Defendants move to dismiss in part on the ground that Gambino is entitled to absolute immunity for the testimony he gave (or did not give) at Myers's trial. Mot. Dismiss at 7. On December 22, 2016, Myers filed his motion, which continues to assert a false arrest claim despite

---

[1] The other claims asserted in Myers's Second Amended Complaint were dismissed as untimely or for failure to state a claim. May Order at 13.

the Court's dismissing that claim in its May Order. Myers Mot. at 7; May Order at 13. In particular, Myers appears to take issue with the Court's decision to dismiss his false arrest claim as time barred. Myers Mot. at 8–10. Finally, Myers asks the Court to "look at the municipality of Saugerties as a defendant." Id. at 10.

## III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV. DISCUSSION

### A. The Motion to Dismiss

As noted above, the only surviving claim in this case is that Myers was deprived of due process at his trial because Gambino, the police officer who arrested Myers, lied on the stand and failed to take the opportunity at trial to correct false claims he had made about Myers. May Order at 8, 13. This claim must be dismissed because Gambino is entitled to absolute immunity for his trial testimony.

As this Court has previously noted, "the Supreme Court has held that police officers are absolutely immune from liability under section 1983 for testifying falsely at trial." Linder v. N.Y. State Police, No. 07-CV-371, 2007 WL 1288027, at *2 (N.D.N.Y. Apr. 30, 2007) (Kahn, J.) (citing Briscoe v. LaHue, 460 U.S. 325, 330–31 (1983)). In other words, if "a plaintiff's claim is premised on perjury by police officers, the plaintiff's ability to recover for violations of his right to a fair trial is hindered by the common law doctrine that shields witnesses, including officers, in a cloak of absolute immunity for their testimony in judicial proceedings." Fappiano v. City of New York, No. 01-CV-2476, 2015 WL 94190, at *19 (E.D.N.Y. Jan. 7, 2015), aff'd, 640 F. App'x 115 (2d Cir. 2016); accord Deraffele v. City of New Rochelle, No. 15-CV-282, 2016 WL 1274590, at *12–13 (S.D.N.Y. Mar. 30, 2016) (holding that plaintiff's claims relating solely to several police officers' allegedly false testimony were barred by absolute immunity); Hoyos v. City of New York, 999 F. Supp. 2d 375, 393 (E.D.N.Y. 2013) ("As witnesses at trial, the officers are entitled to absolute immunity from civil claims based on the substance of their testimony."); Sheff v. City of New York, No. 03-CV-708, 2004 WL 594894, at *7 (S.D.N.Y. Mar. 24, 2004) ("Police officers may not be held liable under Section 1983 for perjurious testimony.").

Myers's claim that Gambino violated his right to a fair trial by offering false testimony (or failing to correct previous misrepresentations) at his trial must be dismissed because Gambino is entitled to absolute immunity for his testimony. True, "[w]here . . . the constitutional tort is the action of a police officer in initiating a baseless prosecution, his role as a 'complaining witness' renders him liable to the victim under section 1983." White v. Frank, 855 F.2d 956, 961 (2d Cir. 1988). But the May Order made clear that the only surviving claims relate to the assertion that Myers "was deprived of due process *during his bench trial*." May Order at 13 (emphasis added). Absolute "immunity is available only where the constitutional tort is simply giving false testimony," White, 855 F.2d at 961, and since that is precisely the case here, Gambino is entitled to absolute immunity, see Hayes v. County of Sullivan, 853 F. Supp. 2d 400, 421 (S.D.N.Y. 2012) ("Although [the officers] were complaining witnesses before the grand jury, Plaintiff is merely seeking to hold them liable for their allegedly false testimony, not for malicious prosecution."); Dukes v. New York, 743 F. Supp. 1037, 1043–44 (S.D.N.Y. 1990) (finding that "[w]hile [absolute] immunity does not extend to the constitutional tort of initiating a baseless prosecution," that exception was inapplicable in the present case because "the allegations directed at [the officer] concern[ed] his testimony during [the plaintiff's] trial"). Thus, Myers's only surviving claim must be dismissed.

A court "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). Myers has already amended his complaint twice, which counsels against granting him leave to amend yet again. See, e.g., Abascal v. Hilton, No.

7

04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 30, 2008) ("[G]ranting a pro se plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."). Moreover, the Court warned Myers in its February Order that his Second Amended Complaint would be his "final opportunity to amend his Complaint." Feb Order. at 7. Finally, because the only remaining claim involves conduct for which Gambino is entitled to absolute immunity, any amendment would be futile. See O'Callaghan v. City of New York, No. 16-CV-1139, 2016 WL 7177509, at *11 (S.D.N.Y. Dec. 8, 2016) ("Absolute immunity . . . bars suit for damages against [the defendants] and any attempts to amend would be futile."); Faison v. Maccarone, No. 11-CV-137, 2012 WL 681812, at *16 (E.D.N.Y. Mar. 1, 2012) ("[A]ny attempt to amend the pleading with respect to defendants . . . would be futile, as they are shielded by absolute immunity."); Shorter v. Rice, No. 12-CV-111, 2012 WL 1340088, at *5 (E.D.N.Y. Apr. 10, 2012) ("[P]laintiff does not have any possibility of asserting a plausible Section 1983 claim because of the application of the doctrine of absolute immunity to his federal claims against the prosecutors. . . . Thus, . . . any amendment to the complaints would clearly be futile, [and] dismissal without leave to re-plead is appropriate."). Thus, the Court will not give Myers another chance to amend his complaint.

   **B. Myers's Motion**

Myers's Motion could be construed as a request for this Court to reconsider its May Order under Federal Rule of Civil Procedure 54(b), which permits federal district courts to reconsider an interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); see also Scott v. Chipotle Mexican Grill, Inc., 103 F. Supp. 3d 542, 545 (S.D.N.Y. 2015) ("The district court . . . 'is vested

8

with the power to revisit its decisions before the entry of final judgment . . . .'" (quoting Transaero, Inc. v. La Fuerza Aerea Boliviana, 99 F.3d 538, 541 (2d Cir. 1996))). It is "within the plenary power of the court 'to review its interlocutory orders "to afford such relief from them as justice requires," and this power is not affected by [Federal] Rule [of Civil Procedure] 60(b).'" Wanamaker v. Columbian Rope Co., 907 F. Supp. 522, 527 (N.D.N.Y. 1995) (quoting Krome v. Merrill Lynch & Co., Inc., 110 F.R.D. 693, 694–95 (S.D.N.Y. 1986)). "[A] motion for reconsideration [under Rule 54(b)] should be denied unless there is a strong likelihood that the district court's decision would ultimately be reversed on appeal." SEC v. Amerindo Inv. Advisors, Inc., No. 05-CV-5231, 2014 WL 405339, at *3 (S.D.N.Y. Feb. 3, 2014). Accordingly, a court should generally refrain from revising its earlier decisions "unless there is 'an intervening change of controlling law, . . . new evidence, or the need to correct a clear error or prevent a manifest injustice.'" Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (quoting Virgin Atl. Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). The May Order is interlocutory because it dismissed "some but not all of [Myers's] claims," Wanamaker, 907 F. Supp. at 527, so Rule 54(b) is the only possible basis for reconsideration.[2]

In his motion, Myers complains that 1,795 days elapsed between his arrest in Saugerties and the filing of his Complaint in this case. Myers Mot. at 6. He suggests that this delay was "intentional . . . as a collaboration of the town court and the law enforcement of that court." Id.

---

[2] Under Local Rule 7.1(g), which requires a party to move for reconsideration no later than fourteen days after the challenged order, Myers's request for reconsideration is untimely, since he is challenging the May Order, which was filed over seventh months before he filed his "Motion for Mandatory Arbitration or Trial Scheduling Order." Docket.

at 7. And he appears to argue that the statute of limitations for the false arrest claim this Court dismissed in its May Order should therefore be equitably tolled. Id. at 6. Yet the Court already rejected this argument in its May Order. May Order at 11–12. As the Court noted, with respect to any claims arising from the arrest, Myers's "injuries occurred at the time of the alleged constitutional deprivations[,] and [he] does not argue that he was not immediately aware of the alleged constitutional deprivations." Id. at 12. Moreover, "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Wallace v. Kato, 549 U.S. 384, 397 (2007). Thus, any delay between the arrest and later events in his state case and the present litigation has no bearing on the question whether his claims stemming from the arrest should be equitably tolled.

Myers also appears to be asking the Court to allow him to amend his complaint a third time so that he can add a claim against "the municipality of Saugerties" for allowing 1,318 days to pass between his arrest and his trial. Mot. at 6, 10. As noted above, since Myers has already amended his complaint twice, the Court need not give him another opportunity to amend, see, e.g., Abascal, 2008 WL 268366, at *8 ("[G]ranting a pro se plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), and the Court informed Myers in its February Order that he would given only one more chance to amend his complaint, Feb. Order at 7. Further, Myers already unsuccessfully attempted to bring a claim against Saugerties. He included Saugerties as a defendant in his original complaint, Compl. at 1, and the Court dismissed any claims against the town nearly two years ago, April Order at 2–3. Since Myers has "made no specific showing as to how he would cure the defects that [the Court

previously identified] if given a [third] opportunity to amend," Coleman v. brokersXpress, LLC, 375 F. App'x 136, 137 (2d Cir. 2010), any request for leave to amend his complaint that could be inferred from his motion is denied.[3]

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 60) is **GRANTED**; and it is further

**ORDERED**, that Myers's Second Amended Complaint (Dkt. No. 49) is **DISMISSED without leave to amend**; and it is further

**ORDERED**, that Myers's Motion for Mandatory Arbitration or Trial Scheduling Order (Dkt. No. 65) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   March 24, 2017
         Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[3] To the extent that Myers also asks this Court to "move to arbitration" or "provide a scheduling order for discovery and trial," Myers Mot. at 10–11, those requests are moot in light of the Court's decision to dismiss his Second Amended Complaint without leave to amend.